Christian, J.,
delivered the opinion of the court.

Statement of the Case.

This was a case of caveat in the circuit court of Augusta county. The caveators are the appellants, A. D. Trotter, *584 James I. A. Trotter, Thomas N. Kinney, and. other heirs at law of Jefferson Kinney. On the 10th day of Decemher, 1873, they filed in the office of the register of Virginia land office their caveat to prevent the issuing of a grant to the appellees, Isaac Newton and Major D. Vines, for forty-seven and one-half acres of land situated m said county of Augusta, on the water of Mary’s creek (now called Smith river), surveyed for said Newton and Vines on the 4th day of June, 1873, by James M. Silling, assistant surveyor of John D. Dilley, surveyor of Augusta county.
The specific grounds upon which they file their caveat are set foi’th as follows :
“ Said caveators respectfully represent that in the year 1854 said A. D. Trotter purchased of one David L. Young and William Kinney, commissioners in the cause of Harnesbarger’s adm'r v. Dowell's heirs, in the circuit court of Augusta'county, a tract of 4,660 acres of land, in which said tract of land the said 47| acres now sought to be entered by the said Newton was embraced, and went to make up said 4,660 acres; that a short time after said purchase said James I. A. Trotter and Jefferson Kinney, who was then living, became associated with said A. D. Trotter in said purchase and joint owners of said tract of land; said A. D. Trotter was placed in possession of said land, and immediately upon his said purchase, and he and said James I. A. Trotter and Jefferson Kinney held exclusive and uninterrupted possession of said tract of land, including said 47J acres, up to the day of the death of said Jefferson Kinney, and said caveators have held like possession ever since. The sale of said tract of land made by said commissioners, Young and Kinney, was ratified by decree of circuit court of Augusta rendered in the above named cause, and by a subsequent decree rendered therein said commissioner, Young, was required to convey said lands to said caveators by a good *585 and sufficient deed; and said commissioner has so conveyed said tract of land to said caveators by deed duly .recorded in the clerk’s office of county- of Augusta. From the time said tract of land was sold to said A. D. Trotter as aforesaid, up to the present date, the taxes assessed against it have been promptly paid up. Said caveators object to the issuing of a grant to said Newton for said 47J acre tract of land—
“1st. Because saidNewton and Vines, and each of them, well know that said caveators were in the possession, use and enjoyment of said land, and had had the same in possession ever since the purchase by said A. D. Trotter from Commissioners Young and Kinney, as aforesaid, and yet wholly failed to notify said caveators of their intention to file an application for a grant thereof. (See § 18 of ch. 112 of Code).
“ 2d. Because the law has not been complied with by said applicants upon filing their said application, in this, that they have wholly failed to make and have endorsed upon the survey filed by them an affidavit such as is required from all persons applying for a grant of lands, under an act of assembly approved February 21, 1871, (see Session Acts of 1870-71, page 136); and in this, that they have wholly failed to have the affidavit of the surveyor of the county endorsed on said survey, as by said act above cited they are required to do.
“ 3d. Because said tract of land is not liable to entry. The survey filed by said applicants, show’s that said land has been surveyed and entered by Thomas Fulton and John Dougherty, March 10, 1795 ; there is no evidence to show that said land has been forfeited, or that it has in any wise become liable to re-entry.
“4th. Because the plat and survey returned by said Newton was made by the surveyor without any authority for so doing. It nowhere appears that said survey was *586 made by virtue of a land office treasury warrant, issued from your office, and is therefore void.
“ Said caveators have had full and complete possession of said land for twenty years under color of title derived 6y decree in the above-named chancery cause, and for ^me they -^ave paid all taxes against said land; this it is insisted should make their claim superior to the claim of any party seeking a grant at this late day, and for reasons above set forth by said caveators, pray that the application of said Isaac Newton may be rejected, and said caveators left in the quiet and peaceable possession of said land; and as in duty bound they will ever pray, etc.
.“A. D. Trotter,
“ James I. A. Trotter,
“ Thomas N. Kinney,
“ And the other heirs at law

of Jefferson Kinney, deceased.”

To these specific grounds of caveat thus set forth, the caveatee filed his answer and pleas in the words and figures following, to-wit:
“This day came the defendant, Isaac Newton, by his attorneys, Sheffey & JBumgardner, and saith that the plaintiffs their caveat aforesaid ought not to have and maintain against the said defendant by reason of the matters and things in said caveat alleged, because said defendant, as to the first alleged cause for which a grant for the premises in said caveat mentioned should not issue to said defendant, saith:
“ 1. That said defendants, Isaac Newton and Major D. Vines, did not know that the caveators were in the possession, use and enjoyment of the said land in said caveat mentioned, or that said caveators had had the same in possession ever since the alleged purchase thereof by A. I). Trotter, one of said caveators, from Commissioners *587 Young and Kinney, and therefore, said defendant, in Ms own right, and as assignee of said Major D. Vines, was well justified in applying for a grant for said land without giving notice to said caveators, or either of them.
“ 2. That as to said second cause or reason why said grant should not issue to said defendant, he saith, that the law has been complied with by said defendant, upon filing his said application, and that he did cause to be made and endorsed upon the survey filed by said defendant proper affidavits according to law.
“ 8. That as to said third cause or reason why said grant should not issue to said defendant, he saith, that, in fact, said caveators claim title and interest in said land mentioned in said caveat, under and by virtue of a grant issued by the commonwealth of Virginia to a certain Major Dowell; and said defendant further, in fact, saith, that said caveators have no title or interest in, and to the land in said caveat mentioned, and that said caveators have no title thereto, under and by virtue of any grant from the said Thomas Fulton and John Dougherty, or either of them, or from any person or persons whatsoever, claiming by, through or under the said Thomas Fulton and John Dougherty, or either of them.
“ 4. That as to said fourth cause or reason why said grant- should not issue to said defendants, he saith, that the plat and survey returned by said defendants was in fact made by the surveyor in pursuance and by authority of law; that said survey was in fact made by virtue of land office treasury warrants, duly issued according to law, and that it so appears by certificate of said surveyor on said survey and plat.
“5. That as to said last or fifth cause or reason why said grant should not issue to said defendant, he saith, that said caveators, or either of them, have not had full and complete possession of said lands for twenty years, under color of title, as alleged in said caveat; that in *588 fact, said caveators have not had full and complete possession of said land at any time, and specially, that they did not have actual possession of said land at the time said defendant and said Major D. Vines made the entry upon, and by virtue of which said survey was made and said grant is demanded.
“ Whereupon, said defendant prays judgment that said caveat be dismissed, &c.
“Sheeeey & Bumgardner,
“ For defendant.”
Upon these issues thus made up in said circuit court of Augusta county (a jury being waived and all questions of law and fact being referred ■ to the court), and upon the examination of evidence, documentary and oral, the said circuit court pronounced its judgment, and' to this judgment a writ of error was awarded by one of the judges of this court.

Opinion.

The .court is of opinion that there is no error in the judgment of the circuit court. While cases of this kind are now of rare occurrence in this court, the rules which govern them are well defined by the decisions of this court and may be stated as follows:
First. In every caveat founded on the alleged better right of the caveator to the land in controversy, the first enquiry is as to Ms title or interest in the subject. He cannot recover upon the mere infirmity of the title of the eaveatee; for however defective that may be, no one has a right to interpose for the purpose of preventing him from carrying his entry into grant, unless he have a better right, legal or equitable, in himself.
Second,. The caveator must state in his caveat the grounds oh which he claims the better right to the land i.n controversy, and he will not be permitted to abandon *589 on the trial the right which he has set out in his caveat, as that under which he claims, and prove a different right. See Walton v. Hale, 9 Gratt. 194; Carter v. Ramey, 15 Gratt. 346; Harper, &c. v. Baugh & al., 9 Gratt. 508.
Let us now apply these principles to the case before us.
The caveators claim title to the land in controversy (the 47-|-acre tract) upon two grounds—First, as purchasers under a decree of the circuit court of Augusta county, rendered on the 7th November, 1856, directing a sale of the real estate of one Major Lowell. The sale was made by Young and Kinney, commissioners of said court, and at the sale the appellants (the caveators) became the purchasers. Under this purchase they claim title to the land in controversy. Second. They claim that they had the actual and uninterrupted possession of said land under a claim and color of title for the period of twenty years.
As to their claim as purchasers from Young and Kinney, commissioners, it is plain that they acquired at that sale only such title as was in Major Lowell. That was all the commissioners sold and conveyed, and that was all the purchasers acquired.
The record in this case conclusively shows that Major Dowell, under whom the appellants claim as purchasers at the judicial sale referred to, founded his claim to the lands sold by Young and Kinney, commissioners, upon a grant of the commonwealth issued by letters patent on the 9th day of February, in the year 1796. But in this very patent, containing the lands sold by said commissioners, and purchased by the appellants, the 47J acres (the land in controversy), is expressly excluded. That patéht contains the following clause: “But it is always to be understood that the survey upon which this grant is founded includes forty-seven and. a half acres of prior claims surveyed for Thomas Fulton and John Lough *590 erty, the 10th of March, 1775, exclusive of the above quantity, &c., which having a preference by law to the warrants and rights upon which this grant is founded, liberty is reserved that the same shall be firm and valid and maybe carried into grant; and this grant shall be no bar in either law or equity to the confirmation of the title to the same as before-mentioned and reserved.” And accordingly we find that on the 11th of April, 1798, a grant by letters patent, reciting warrant issued on 18th day of August, 1783, was issued to the said Thomas Fulton and John Dougherty, for the said forty-seven acres of land, which is the same land now in controversy. It is plain, therefore, that Dowell never having the legal title in him, the purchasers at the sale of his lands acquired no title. And it being conclusively shown that the legal title was in Fulton and Dougherty, derived by them from the commonwealth, and the appellants not' connecting their title with them, they have failed to show any legal title in themselves.
But failing in this, the appellants (who are the caveators) rely upon an equitable title based upon actual adverse possession for twenty years under a color of title, which they insist has now ripened into a perfect title. Let us now examine this claim of the caveators. If they succeed in asserting their claim as caveators against the caveatees,-it must be upon the ground that they have the better title, derived not from any legal title in them, or in Dowell, under whom they claim, but upon the ground that they have had an adverse possession for the period of the prescriptive bar of the statute, which gives to them the better title against the caveatees.
Judge Baldwin, in the leading case of Taylor's devisees v. Burnsides, 1 Gratt. 165, 190, followed by this court ever since, has succinctly stated the rule governing a claim of title under adverse possession, as follows: “When we look to the elements of an adversary posses *591 sion in reference to conflicting claims and the statutory prescriptive bar, we find it to consist of an exclusive, actual, continued possession, under a colorable claim of title.” It must be: first, exclusive; second, it must be actual as contrasted with constructive possession; and, third, such exclusive and actual possession must continue in the claimant or those under whom he claims for the period prescribed by the statute. These three things must concur in order to constitute a valid title founded on a claim of adverse possession.
Applying these principles to the case before us, it is clear that the caveators have no.t shown by the evidence such acts of actual and exclusive possession as entitle them to claim the land in controversy. The land which they purchased at the sale made by Commissioners Young and Kinney was an extensive boundary of wild mountain land, described by one of their own intelligent witnesses, Major Hotchkiss, “as a perfect wilderness, and did not look (in 1868) as if a human being had ever visited them.” There is some evidence, it is true, to show that cattle had been grazed on some parts of the land so purchased, and that brush fences had been placed upon some portions of the same, but even these temporary fences have gone down years ago and not a trace of them was left when the entry was made by the caveatees; nor is there any evidence showing that the forty-seven and one-half acre tract in controversy was so grazed, or that it was ever enclosed. Indeed, one of the caveators, who was examined as a witness, admits that the fences on the land were two miles from the forty-seven and one-half acre tract; that the lands were wild mountain lands, and that the fences spoken of were only at such points in the mountains as was necessary to keep stock from leaving the lands in certain directions; that the mountains most generally themselves made a fence.
There was evidence also proving that one of the cavea *592 tors had frequently sent Ms son and others to get specimens of ores from the forty-seven and one-half acre tract, which had been sent to various parts of the United States, accompanied by maps he had made of these lands. And he admits he had no other possession, except by sending for specimens of ores, and by such fencing and grazing as above described.
The court is of opinion that such acts of ownership and possession on the part of the caveators as are proved by the evidence in the record, are not sufficient to constitute the elements of an adversary possession, which in order to give title must .be exclusive, actual and continuous, under a color of title, for the period of the statutory prescriptive bar. This would be true if the case stood alone upon the uncontradicted evidence of the caveators. JBut the evidence is conflicting and contradictory. It is proved by the caveatees that there was no actual possession by any one, and that the ore banks on the forty-seven and one-half acre tract were once mined by one Bryan, who had made or repaired a road in 1835 ; that all the work ever done on the forty-seven and one-half acre tract was done by Bryan, who died in 1852 or ’3; that no one had been in possession of the property since; that the whole was a vast wilderness of mountain land, over which cattle ranged generally, and it was no sign of separate ownership that cattle ranged over these mountains; and that caveatees never knew of any claim of ownership or possession on the part of caveators, who were never in actual possession.
Uow, in this ease a jury being waived, the court tried both questions of law and fact, and there being a certificate of the evidence, this court will treat it as a demurrer to evidence. So treating it, it is impossible to conclude upon the evidence set out in the record, that the caveators have established, as against caveatees, a better right to the land in controversy.
*593 As to the second and fourth grounds of caveat set out by the caveators, it is sufficient to refer to the following agreement of counsel found in the record of the trial in the court below:
■ “It was agreed by the counsel for the caveators that the requirements of the statute, objected to in the specifications of the caveat, had been complied with, and these objections were waived.”
"With respect to the third specification, to-wit: “ 3d. Because said tract of land is not liable to entry. The survey filed by said applicant shows that said land has been surveyed and entered by Thomas Fulton and John Dougherty, March 10th, 1795. There is no evidence to show that said land has been forfeited, or that it has in anywise become liable to re-entry,” it is sufficient to say that the caveators do not profess to claim under Fulton and Dougherty; and it is no concern of theirs that the land has been surveyed and entered by the latter, unless they can show a better right in themselves. They cannot rely on any infirmity in the title of the caveatees, but can only succeed upon showing a better legal or equitable title in themselves. Carter v. Ramey, 15 Gratt. supra.
In.his petition for a writ of error, the learned counsel for the caveators relies upon the fact that they had also located a warrant on the land in controversy, and claims that they (the caveators) are protected by the provisions of the 14th section of chapter 108, Code 1873. That provision is as follows: “If any person not having such possession and claim shall locate a warrant on such land without having given such notice, then the person having such possession and claim, may, at any time before a grant issues to the person thus failing to give such notice, locate a warrant on such lands and file with the *594 register a caveat to prevent the issuing of a grant to the person thus failing to give such notice.”
Now, in taking this position, for the first time in his petition here, the learned counsel assumes that the caveators were in actual possession of the land in controversy. This assumption, as has been seen, is not sustained, but is disproved by the record. But it is sufficient to say the point was not made in the court below. It was not alleged in the specifications as one of the grounds of caveat; it was not put in issue in the circuit court, and cannot be considered for the first time in the appellate court.
In Harper, &c. v. Baugh, &c., 9 Gratt. 508, it was held by this court that the caveator must state in his caveat the grounds’ on which he claims the better right to the land in controversy, and he will not be permitted to abandon in the trial the right which he has set out in his caveat- as that under which he claims, and prove a different right. .
Judge Allen, delivering the opinion of the court in that case, says: “ The law requires the caveat to express the nature of the right on which the plaintiff claims the land. The object of the caveat is, in part,, to notify the caveatee of the grounds on which the caveator claims the better right, that he come prepared to controvert it; and it would be surprise on him to permit the caveator to abandon at the trial the right which he had set forth in his caveat, as that under which he claimed, and prove a different right. Such a course would lead to injustice, and is in conflict with the terms of the statute, which requires the nature of the better right to be expressed in the caveat.”
Upon the whole case, we are of opinion that there is no error in the judgment of the circuit court of Augusta -county, and that the same be affirmed.
*595 Anderson, J. The question is not whether the caveator has a good title against the world, but whether he has a better right than the caveatees. It is a comparison of their rights. The caveatees have no right at all. Their ■own survey, for which they seek to obtain a grant from the commonwealth, shows upon its face that the same land had been previously located by Fulton and Dougherty, .and the record shows, had been carried into grant by them, by patent bearing date as far back as 1798. That being so, it is not waste and unappropriated land, and it has not been forfeited to the commonwealth. There is not a particle of evidence to show that it has been forfeited. There are no other lands, than such as fall within one or the other of these two descriptions, that are subject to location by land office treasury warrant, or to grant by the commonwealth, except inclusive surveys. The commonwealth having previously parted with her title to other parties, she is invested with no title which can pass by her grant to others. And the statute expressly prohibits the register of the land office from receiving “ into his .office any plat and certificate of survey, which evidently comprehends the rights of any other than him for whom such survey is made, notwithstanding any deductions or reservations; ” and it declares that “every such survey shall be void.” It evidently appears on the face of the survey itself, which the caveatees returned to the register’s office for a patent, that it comprehends the rights of others, for it says “it is the same land formerly surveyed to Thomas Fulton and John Dougherty, March the 10th, 1795, and reserved in the survey of Major Dowell’s 15,100 acre survey of May 1, 1795, containing 47|- acres.” It may be said that the foregoing does not show that the survey returned to the register’s office “ evidently comprehends ” the rights of others, because the surveyor omitted to state that Fulton and Dougherty afterwards obtained a patent for their *596 said survey. It seems to me that what is stated does evidently show that the caveatees’ survey comprehends the rights of others. Fulton and Dougherty had rights,, because they are reserved to them in Dowell’s patent; and this appears on the face of the caveatees’ survey. The prohibition is not made to depend upon evidence that the survey comprehends another’s legal title, but “ rights ” of others, which may be acquired by entry and survey. But the register has in his office the' patent which emanated to Fulton and Dougherty in 1798, a copy of which is filed in this cause. By turning to which, registered in his office subsequent to the date of the survey which is given, which he should do, he will find conclusive evidence that the survey for which he is asked to issue a patent to the caveatees, evidently comprehends the rights of others. And having this evidence on the face of the survey, and in his own possession, it seems to me that he could not issue a grant to the caveatees without violating a plain provision of the law; and that a grant so issued, by the express terms of the statute, would be void.
It was plainly the intention of the legislature to prevent the issuing patents for land, which evidently comprehended the rights of any other than him for whom the survey was made, in order to prevent the disturbance of titles to land and litigation and strife. And this is further shown by the next (the 48 d) section, which prohibits the issuing a grant upon the survey returned to the register’s office, “ unless there be endorsed on such survey the affidavit of the person applying for the grant, as well as that of the surveyor making the survey, that they verily believe that the land embraced in the suiwey has not been previously appropriated, or that it was at the time of the entry thereof liable to entry,” &c. The first they could not make, it is reasonable to presume, because they knew it had been previously appropriated. *597 But if .they knew it had been previously appropriated, or had such knowledge of it that they could not swear that they believed it had not been previously appropriated, it cannot well be perceived how they could make affidavit that they believed it was liable to entry at the time of the entry thereof. I do not mean to say, or intimate, that they had not some views of their own which justified them in tlieir own minds in that belief, but I cannot conceive what they were. Certainly under the law, if the land had been theretofore appropriated by others, it was not subject to their entry, unless it had been forfeited to the commonwealth; and they have furnished not the slightest evidence of a forfeiture to justify their belief.
Of one thing I think there can be no question or contrariety of opinion, and that is, if a grant is issued to these caveatees, it defeats the purpose and intention of the legislature by these enactments.
These conclusions are well supported by authorities cited by Judge Fultz in the clear and forcible presentation of the case for the appellants in their petition. In Carter v. Ramey, 15 Gratt. 346, cited by him, the court said: “In this case it is agreed that the land embraced in the caveatees’ survey lies wholly within the boundaries of the tract of 4,000 acres, granted to one Richard Smith by patent bearing date 21st of February, 1768, and that the 4,000 acre tract had never been forfeited to the commonwealth, under her revenue laws or otherwise. Thus it is not liable to entry, either as waste or unappropriated or as forfeited land, and the entry of the caveator, so far as it embraced the land of the caveatee, being wholly unauthorized by law, was simply void, and could confer no equity whatever. And a grant founded upon such void entry would pass nothing, there being nothing in the commonwealth upon which the grant could operate.” In Levasser v. Washburn, 11 Gratt. 572, *598 the court held that, “in the absence of a statutory provision authorizing the location of forfeited lands, no title-could be acquired to such land by entry and survey, and a patent obtained for them would be merely void.” Hannon v. Hannah, 9 Gratt. 146, is to the same effect.
If the grant for lands which have been previously appropriated, and which have not been forfeited, is void, surely the same causes which would avoid and annul it after it has been issued are sufficient to prevent the issuing of it.
But it is said this may all be true; but how does it concern the caveators? They have no interest in the land, and no rights which can be affected by the issuing of the grant, and have no right to come into court to resist the issuing of the grant to the caveatees. Is this so ? Have they no interest in the subject and no rights involved in the question ?
They were the innocent purchasers of the identical land for which the caveatees seek to obtain a grant from the commonwealth under a decree of the circuit court of Augusta in 1854, about twenty-three years ago. The sale to them was confirmed by a subsequent decree of the court, and a commissioner (1). S. Young)< appointed to convey the land to them, which conveyance he made, and the deed was recorded. The land they purchased contained 4,660 acres, and is part of a tract of 15,100 acres granted by the commonwealth to Major Dowell, upon a survey which included 47J acres of prior claims surveyed for Thomas Fulton and John Dougherty, which is reserved to them by the said grant. The land purchased by the caveators was laid off and surveyed from the main tract by the county surveyor, and no reservation made by said survey of the 47| acres. And no reservation of it is made in the decrees of sale and confirmation, or in the deed conveying the title to the caveators. There is no evidence in the cause that they *599 knew that the 47J acres reserved by* the patent was within the boundary sold and conveyed to them, or in fact that they were aware that any reservation at all made by the patent, or that they had even seen the patent; and if they had seen it they could not have learned from that that any part of it was within the boundaries sold to them; and no reservation being made by the survey which was made under the supervision of the court, and the same being decreed to be sold without any reservation, and sold under that decree to them without any reservation, and so conveyed to them, they are the purchasers of all the land within the boundary sold to them, which embraces every foot of land embraced in the caveatees’ survey. • And they are the purchasers of the same, and have held it under the decree of the .court for more than twenty years, and by subsequent conveyance. And having purchased the whole tract of 4,660 acres by the acre, they have held the 47J acres precisely as they have held the balance of the tract ever since the purchase, and have paid for every acre of it. They allege that two of their joint purchasers, immediately after their purchase, took possession of it, and grazed cattle upon the whole tract, and fenced a portion of it, and that they have held peaceable and uninter rupted possession of it ever since, for more than twenty years.
There is no proof that these purchasers have ever had any visible occupation and improvement of any part of the forty-seven and a half acres, except the taking samples of ore from the ore banks upon it, and including the same in the maps of the 4,660 acres which Major Hotchkiss made for them and which were given to the public, and unless they can connect themselves with Elisha Bryan’s possession, I think that they have not proved such a possession as would, in a controversy between them and Fulton and Dougherty, or persons claiming under *600 their title,, bar their better title. But I need not stop to pursue that enquiry, as it is not a question of title between -them and the holders of the outstanding better title; that is not involved in this suit, but it is a controversy between them and the caveatees, which has the better right. It is not necessary that they, the caveators, should show a better title than Fulton and Dougherty. There is no controversy between them. ‘ Dor can the cavatees rely on an outstanding better title in another, with which they do not and cannot pretend to connect themselves. By so doing they show that they themselves have no rights. All that it is necessary for the caveators to show is, that they have a better right than the caveatees have, and that they have an interest which entitles them to object to the issuing of a grant to the caveatees.
They have such an interest. They have better right than the cavatees, which involves a comparison of rights, and consequently leads to an enquiry as to what are the rights of the caveatees as well as the caveators. The former, we have seen, have no rights whatever, but are attempting to acquire what the law prohibits to them. The latter, as we have seen, is a purchaser of the identical forty-seven and a half acres of land under a decree of the court more than twenty years ago, and have paid for it, and have held such possession of it as would be good against the caveatees who had no title, nor color of title, the possession of a part being the possession of the whole as to them, though it might not be good against the holder of the better title, to bar which it would be necessary to have uninterrupted and exclusive possession, pedis possessionem, of apart of the forty-seven and a half acres, which cannot, however, benefit the caveatees; they have no connection with said title, and do not claim under it, but against it. It seems to me that the caveators have had such possession under color of title as would have clearly entitled them to have maintained an action of trespass against *601 the caveatees, and consequently to maintain this caveat; and having shown that they have better right to the land than the caveatees have, as they bought and paid for it more than twenty years ago, have held it ever since under a decree of the court, and for years under a deed in execution of said decree, uninterruptedly until the present time, and paying the taxes upon it; that although they may not have as good a title as Fulton and Dougherty, they have a better right than the caveatees, and therefore I am of opinion to reverse the decree of the circuit court.
Judgment arrirmed.